UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MARK GALLOWAY,

    Defendant.

Case No. 2:20-mj-01041-EJY

**ORDER**

Pending before the Court is Defendant Mark Galloway's ("Galloway") Motion to Dismiss, or in the Alternative, for Sanctions Excluding the Use of Chemical Test Evidence.  ECF No. 16.  The Court has considered Galloway's Motion, the Government's Response (ECF No. 24), and Galloway's Reply (ECF No. 25).  The Court finds as follows.

**I.      Relevant Background**

On December 6, 2020, Galloway was pulled over by Rangers Romine and Fitch (the "Rangers") in the Lake Mead Recreation Area who made a high-risk stop based on reliable information received through a 911 call to the Lake Mead Interagency Dispatch Center.[1]  After Galloway's demonstration of erratic behavior upon being stopped, he was handcuffed and placed in the back of Fitch's patrol car while Galloway's car was searched.  When the Rangers returned to speak with Galloway, Romine smelled alcohol on his breath and asked Galloway to submit to "a couple  of tests to make sure … [he was] good to drive."  The conversation continued as follows:

> Galloway:    No, I would rather take a breath test.
>
> Romine:    You want to take a breath test.
>
> Galloway:    No, I don't know, what's easier?  Please, I don't want—please don't do this to me man.
>
> Romine:    Ok. I mean—it is your choice. I can't make you do one or the other.

---

[1]      The events leading to the high-risk stop are discussed in the Court's Order on Galloway's Motion to Suppress. Because they are not necessary for purposes of resolving this Motion to Dismiss, those facts are not recounted here.

| | | |
|---|---|---|
| 1 | Galloway: | Neither.  I don't want to do none. |
| 2 | Romine: | So … you don't want to do either? |
| 3 | Galloway: | Wait.  I don't … I am not refusing.  I don't want to be arrested either. |
| 4 5 | Romine: | OK.  Do you want to do a breath test?  Want to do a blood test?  I can do a blood test.  Blood or breath, if you want to consent to do either. |
| 6 | Galloway: | Walk, maybe? |

Gov't Ex. 4 (Dash Cam Video) at 10:12:46-10:13:18.[2]  Romine then conducted three field sobriety tests, each of which yielded several clues of intoxication.  The Rangers arrested Galloway for driving under the influence ("DUI") and took him to the Boulder Beach Ranger Station.  Romine read Galloway his *Miranda* rights on the way to the station, and again when they arrived.  At the station, Romine began the process to conduct a breathalyzer test.[3]  He advised Galloway:

| | | |
|---|---|---|
| 12 13 14 | Romine: | *So if you don't do this test, it's another charge* and your license is going to be suspended for six months.  Suspended - revoked, the state of Nevada will revoke your driver's license.  Okay.  And it's *another charge.* |
| 15 | Galloway: | Why are you charging DUI if I passed the test? |
| 16 | Romine: | Who said you passed the test? |
| 17 | Galloway: | Well, if I do? |
| 18 19 | Romine: | I can't say you're going to pass or not.  *This is another charge*, I still have probable cause to charge you with the other, the first DUI charge. |
| 20 | Galloway: | Because you think I was … |
| 21 | Romine: | This is two DUI charges.  *Depending on what you give on this, that's two charges.  I still have you on the first DUI charge.* |

Gov't Ex. 4 at 10:58:19-10:58:57 (emphasis supplied).

After a 15-minute observation period, Romine told Galloway he would conduct a chemical test.  Galloway responded by requesting a lawyer:

| | | |
|---|---|---|
| 25 | Galloway: | I want a lawyer. |

---

[2]     The Court has converted military time on the Dash Cam Video to standard time.

[3]     Before consenting to the breath test, Galloway asked for a blood test.  Romine informed Galloway that a blood test would be much more invasive and would involve transferring him to a jail to conduct the test.  Galloway then agreed to do the breath test instead.  Gov't Ex. 4 at 10:58:00-10:58:15.

| | | |
|---|---|---|
| Galloway: | I want a lawyer. |
| Romine: | So you don't want to do the test? |
| Galloway: | I want a lawyer. |
| Romine: | OK. Counts that as a refusal. |
| Galloway: | [indecipherable] refusal. I want a lawyer.  Can I have a lawyer? |
| Romine: | You can't have a lawyer right now.  Are you refusing to do the test? |
| Galloway: | In front of a lawyer, yes. |
| Romine: | OK.  Then that's a refusal. |
| Galloway: | OK give me the f__king test that's fine. |
| Romine: | OK, you already said you wanted a lawyer.  Do you want me to re-advise you of your rights? |
| Galloway: | Give me the test please.  I just want to go home. |
| Romine: | OK I'm going to re-advise you of your rights, OK? |
| Galloway: | Please let me go home, just give me the test. I don't want to be here, I didn't do nothing wrong.  I know my rights, please, just let me do the test.  Let me make a phone call or something. |

*Id.* at 11:10:36-11:11:31.  Romine again read Galloway his *Miranda* rights and performed the breath test.  The test yielded results of .105 and .107 g/200ml of blood alcohol.  ECF No. 1 at 7.  Galloway was charged with operating a motor vehicle while under the influence of alcohol, 36 C.F.R. § 4.23(a)(1), and operating a motor vehicle with a BAC of 0.08 grams and higher, 36 C.F.R. § 4.23(a)(2).  Two other charges were dismissed.

Galloway contends that his exchange with Romine violated his Fifth Amendment due-process rights because Romine "misadvised" him of the consequences of refusing a chemical test and refused his request for an attorney before he took the breath test.  Galloway argues that Romine's reference to "another charge" for refusal was vague and did not adequately warn him of the separate charge he could face if he refused the test.  Galloway also contends that Romine gave him the wrong admonition regarding his driving privileges by informing him of Nevada state consequences rather than the relevant federal ones.  *See* ECF No. 16.

## II.  Analysis

Due process "is not a technical conception with a fixed content unrelated to time, place and circumstances."[4]  Instead, it "is flexible and calls for such procedural protections as the particular situation demands."[5]  "The touchstone is fundamental fairness."[6]  To determine whether a defendant was denied due process, the court weighs "(1) 'the private interest that will be affected by the official action'; (2) 'the risk of erroneous deprivation of such interest through the procedure used, and the probative value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest' in keeping the existing procedure."[7]

The U.S. Supreme Court and the Ninth Circuit have taken up the constitutional contours of breath tests, and a suspect's decision to take or refuse one when prompted by government officials. The Supreme Court held that due process does not require a state to obtain consent from a suspect before performing a blood-alcohol test.[8]  The Supreme Court also held that there is no constitutional right to refuse a breath test—the ability to refuse is "simply a matter of grace bestowed by the [State] legislature."[9]  Officials have no due-process obligation to inform suspects of every consequence of a breath test.[10]  Indeed, it may be that officers have no constitutional duty to warn a suspect of *any* of the consequences of refusal.[11]

---

[4]     *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976).

[5]     *Id*.

[6]     *United States v. Harrington*, 749 F.3d 825, 828 (9th Cir. 2014) (quoting *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 320-21 (1985)).

[7]     *Harrington*, 749 F.3d at 828 (quoting *Eldridge*, 424 U.S. at 335 and referred to herein as the "*Eldridge* factors").

[8]     *Schmerber v. California*, 384 U.S. 757, 760 (1966); *see also South Dakota v. Neville*, 459 U.S. 553, 560 (1983) ("*Schmerber*, then clearly allowed a State to force a person suspected of driving while intoxicated to submit to a blood alcohol test.").

[9]     *Neville*, 459 U.S. at 565.

[10]    *See id.* at 566 (holding that failure to warn suspect that refusal could be held against him in state court did not violate due process, explaining that "the warning that he could lose his driver's license made it clear that refusing the test was not a 'safe harbor' free of adverse consequences").

[11]    *See Harrington*, 749 F.3d at 830 ("We doubt that the Constitution requires any admonition be given to DUI suspects" about the consequences of blood-alcohol tests).

4

A.   <u>Galloway relies on two cases, each of which is distinguishable from the case at bar</u>.

Galloway relies on two cases—*United States v. Harrington*[12] and *Roberts v. Maine*[13]—to contend the "inaccurate" admonition he received and his unfulfilled request for a lawyer violated his due process rights.[14]   Neither case supports the relief Galloway seeks.

In *Harrington*, the defendant was arrested on suspicion of drunk driving on federal land and was asked to take a breath test.[15]   Before the defendant decided whether to take the test, the ranger repeatedly read him the admonition for refusing under California law.[16]   This admonition informed Harrington that refusing the test would result in fines and imprisonment *if* he was convicted of the underlying DUI charge.[17]   However, because the defendant was arrested on federal land, the ranger should have advised defendant of the federal consequences of refusal.   Unlike California law, federal law recognizes a separate charge for refusing to submit to a breath test that carries a maximum penalty of six months in jail and/or a $5,000 fine.[18]   Harrington refused the test and was subsequently charged under the federal refusal law.[19]   The underlying DUI charge was ultimately dismissed, but Harrington was found guilty of refusing the breath test under federal law.[20]   Harrington was sentenced to 120 days imprisonment and probation.[21]

The Ninth Circuit started its order with what it found was a "fundamental fact"; that is, "that the park rangers misinformed Harrington three times as to the criminal consequences of his

---

[12]   749 F.3d 825, *supra*, n.6.

[13]   48 F.3d 1287 (1st Cir. 1995).

[14]   The government responds to this argument by contending that *Harrington* applies only to instances where the defendant refused a blood-alcohol test and subsequently suffered the consequences of that refusal.   ECF No. 24 at 6-7. The government cites no authority to support this proposition.   Without more, the Court cannot agree with this interpretation.   *Harrington* and *Roberts* are concerned with the choice a suspect must make when asked to take or refuse a blood-alcohol test.   *See Harrington*, 749 F.3d at 828 ("officials risk erroneously depriving a suspect of his liberty when they misrepresent *the consequences of his choices*").

[15]   *Harrington*, 749 F.3d at 827.

[16]   *Id.*

[17]   *Id.*

[18]   *Id*. at 828.

[19]   *Id*. at 827.

[20]   *Id*.

[21]   *Id*.

5

refusal."[22]  It was this repeated, inaccurate advisement that played a significant role in the court's decision that the rangers violated the defendant's due process rights.[23]

Considering the *Eldridge* factors, the court determined that Harrington's liberty interest in being free from incarceration was "jeopardized when the rangers misinformed him of the actual consequences of refusing the test—namely, a criminal charge carrying a potential penalty of six months imprisonment," which became a reality when he was sentenced to 120 days in jail.[24]  The court further stated that Harrington's "consequence of refusal was far more severe than the suspended license described by the rangers."[25]  The court found that "government officials risk erroneously depriving a suspect of his liberty when they misrepresent the legal consequences of his choices."[26]  The court emphasized the "stark difference between the consequences of refusal as described by the rangers and the real consequences," and the fact that the officers read the wrong admonition three times when concluding that the inaccurate admonition risked erroneous deprivation of Harrington's liberty interests.[27]  The court stated it was "fundamentally unfair to convict Harrington on the refusal charge when he was told time and again that his refusal … was not itself a crime, even though it was."[28]  Ultimately, the Ninth Circuit held that while the court "doubt[s] that the Constitution requires any admonition be given to a DUI suspect … when an admonition is given, … due process is violated where, as here, the admonition incorrectly informs the suspect that his refusal is not a freestanding crime, when in fact it is."[29]

In *Roberts*, the defendant was arrested on suspicion of drunk driving and taken to the police station in handcuffs, in which he remained throughout the events described by the court.[30]  Roberts was then read a written version of a statement advising him of the requirements to complete a chemical test to determine his blood alcohol that concluded with the statement that defendant had

---

[22]    *Id*.
[23]    *Id*. at 828-29.
[24]    *Id*. at 828.
[25]    *Id*.
[26]    *Id*. at 828 (internal citation omitted).
[27]    *Id*. at 829.
[28]    *Id*. at 829.
[29]    *Id*. at 830 (internal citations omitted).
[30]    *Roberts*, 48 F.3d at 1288.

"been advised of the consequences of failure to comply with the duty to submit to and complete a chemical test at the request of an officer."[31]  This admonition, however, failed to include that if Roberts refused to take the chemical test it would "result in a mandatory minimum sentence of 48 hours incarceration upon conviction."[32]  The defendant also repeatedly requested, but was denied a lawyer during the time that the officer "was administering the implied consent procedure."[33] Ultimately, Roberts refused the test, was convicted of the underlying DUI, and was sentenced to the mandatory two days of incarceration for refusing the test.[34]

The First Circuit found that "[t]he combination of circumstances in this case presents a unique situation … [that] failed to meet the requirements of fundamental fairness through governmental conduct that offends the community's sense of justice, decency and fair play."[35]  The court reasoned that the admonition given by the arresting officer was fundamentally misleading because, when the officer took Roberts into custody and held him in handcuffs, the officer presented Roberts "with a choice that had irrevocable sentencing consequences involving a mandatory period of incarceration" about which he was *not* advised.[36]  The admonition also implied that the list of consequences given to Roberts was complete, when it clearly was not.[37]  The Court found that the misleading nature of the admonition "greatly increased the risk that a two-day jail sentence would be imposed on Roberts as a result of a decision made in reliance upon misleading information."[38] The court further found that refusing Roberts' reasonable request for an attorney, in the unusual circumstances presented, had due process implications specifically because the mandatory sentence was unavoidable the moment the defendant refused.[39]

In reaching this decision, the First Circuit distinguished the circumstances facing the defendant in *Roberts* from the facts in the Supreme Court decision in *Neville.*  The court identified

---

[31] *Id*. at 1289.
[32] *Id*. at 1289 and 1292.
[33] *Id*. at 1289.
[34] *Id*.
[35] *Id*. at 1291.
[36] *Id*. at 1292.
[37] *Id*. at 1292.
[38] *Id*. at 1293.
[39] *Id*.

the "much lower magnitude" of the liberty interest in *Neville*—the introduction of refusal to take the test as evidence of guilt at trial—than facing Roberts—the liberty interest in freedom from incarceration.[40]   The court also distinguished the consequences of the officer's failure to warn Roberts of the "irrevocable and irrebuttable" two day sentence from the consequences arising from the failure to warn Neville—"an evidentiary disadvantage that could be rebutted."[41]   Finally, the court emphasized the "unfairness" to Roberts that was "not found in *Neville*."[42]   "In the *Neville* case, the Supreme Court specifically noted that the suspect was given no implicit assurances that he was being warned of all the consequences of refusing to submit to testing, … whereas … Roberts was told that he had been advised of 'the consequences' incorrectly implying that there were no additional consequences."[43]

B.   <u>Romine's admonition did not risk erroneous deprivation of Galloway's liberty interests</u>.

Romine's admonitions and actions did not deprive Galloway "of liberty in a manner lacking in fundamental fairness and offensive to the universal sense of fair play."[44]   Although not a model of clarity, Romine's warning did not fail to advise Galloway of "another charge" if he refused the test.  In fact, the very opposite is true.  Romine also did not fail to inform Galloway of any mandatory jail time implicating Galloway's fundamental liberty interest.  Romine did not tell or imply that he provided Galloway with a complete list of all consequences of his choices when that was not the case.  When Romine's admonitions are considered in the context of the entire exchange with Galloway, they are not so deficient as to mislead Galloway and risk the erroneous deprivation of Galloway's liberty interests.

Before the statements that Galloway challenges were made, Romine told Galloway he had probable cause to arrest him for a DUI, that federal law requires him to submit to a chemical test, and that Romine was requesting Galloway take a breath test.[45]   Seconds later, after discussing

---

[40]   *Id*. at 1295.
[41]   *Id*.
[42]   *Id*.
[43]   *Id*.
[44]   *Id*. at 1292.
[45]   Gov't Ex. 4 at 10:57:42-10:57:58.

whether Galloway wanted to do a blood or breath test,[46] Romine stated: "So if you don't do this test, it's another charge."[47]  Romine's admonition did not include an admonition regarding a mandatory loss of liberty because, under federal law, there is none associated with refusing the test.[48]  And, Romine did not provide a list of consequences suggesting the list was complete when it was not.

The exchange between Galloway and Romine continued with Galloway asking why he is being charged with a DUI if he passed the field sobriety test, thus indicating Galloway knew Romine planned to cite him for driving under the influence.  Romine responded by stating: "Who said you passed the test?" Galloway then immediately asked Romine, clearly referring to the breath test about to be given in the Ranger Station: "Well, if I do?"  In response, Romine stated: "I can't say you're going to pass or not.  This is *another* charge, I still have probable cause to charge you with the other, the first DUI charge."  Romine continues and confirms that if Galloway fails the breath test in the Ranger Station, this is a separate charge—"This is two DUI charges.  Depending on what you give on this, that's two charges."

Romine's admonition is again correct.  Galloway was charged with operating a motor vehicle while under the influence of alcohol, 36 C.F.R. § 4.23(a)(1) based on his field sobriety test, and operating a motor vehicle with a BAC of 0.08 grams and higher, 36 C.F.R. § 4.23(a)(2), for failing the breathalyzer test at the Ranger Station.  Romine was neither imprecise nor wrong when he advised Galloway that a second charge would arise if Galloway took the breath test in the Ranger Station and failed.  Once again, Romine's admonition did not state or infer a finite list of consequences that would arise if Galloway failed the breath test; nor did he fail to include a mandatory loss of liberty that would attach to a failure because there is none.

Galloway nonetheless contends that Romine's "another charge" statement was impermissibly vague and that, "in context, Romine seemed to refer to the fact Romine believed he

---

[46]     Galloway contends that Romine should have given the option of either a blood or a breath test, and Romine's "advisement gave the misleading impression that the breath test was the only option."  ECF No. 16 at 6.  However, the conversation between Romine and Galloway belie this contention.  Gov't Ex. 4 at 10:58:00-10:58:15.  Moreover, Romine told Galloway, before he took field sobriety tests in the field, that he could have a breath or a blood test instead. ECF No. 17 at 4 (citing Gov't Ex. 4 at 10:12:46-10:13:38).
[47]     *Id*. at 10:58:19-10:58:31.
[48]     There is no mandatory sentence that accompanies the regulation criminalizing refusal.  *See* 36 C.F.R. § 1.3; 18 U.S.C. § 1865(a).

had probable cause to charge Galloway with Count One, Operating a Motor Vehicle while Under the Influence of Alcohol, and was trying to get probable cause to charge Galloway with Count Two, Operating a Motor Vehicle with a BAC of 0.08 Grams and Higher by having him take a chemical test." ECF No. 16 at 7.  Galloway also takes issue with Romine's failure to "clarify what the consequences of a separate federal charge are." ECF No. 16 at 7.

The Court disagrees with Galloway's contentions.  Romine's statements leave no doubt that he advised Galloway that he would face "another" charge unless he took a breath test and passed it. Romine's statements do not mislead Galloway into believing all consequences of his choices have been identified.  Romine also does not misrepresent the legal consequences of Galloway's choices. Rather, Romine told Galloway that his choice was to refuse the test and face another charge, or take the test and, if he failed, face another charge.  There is nothing misleading about these admonitions that implicates Galloway's due process rights.

Moreover, the law does not require Romine to provide a specific and detailed account of every consequence that may stem from refusal or consent to take a breath test.  The Supreme Court in *Neville* upheld a partial warning that informed the defendant of some consequences, but did not tell him that refusal could be used against him in court.[49]  Specifically discussing reference by the prosecution to a criminal defendant's silence following a *Miranda* warning, the *Neville* Court found that the same concern does not apply to the admission of a defendant's refusal to take a breath test: "Unlike the situation in *Doyle* [*v. Ohio*, 426 U.S. 610 (1976)] we do not think it fundamentally unfair for South Dakota to use the refusal to take the test as evidence of guilt, even though respondent was not specifically warned that his refusal could be used against him at trial.  First, the right to silence underlying the *Miranda* warnings is one of constitutional dimension, and thus cannot be unduly burdened.  Respondent's right to refuse the blood-alcohol test, by contrast, is simply a matter of grace bestowed by the … [state] legislature."[50]

Here, Romine's failure to advise Galloway of the specific consequences of a refusal to take the breath test is not equivalent to the right to remain silent.  As is true in this case, the *Neville* Court

---

[49]    *Neville*, 459 U.S. at 565-566.
[50]    *Id*. at 566.

10

1    found that it is "unrealistic to say that the warnings given … implicitly assure[d] a suspect that no

2    consequences other than those mentioned will occur."[51]  The *Neville* decision confirms that Romine

3    advised Galloway that his decision whether to take the breath test had consequences—an additional

4    charge.  Romine did not mislead Galloway as to the consequences of that charge.

5            Based on the foregoing, the Court finds no constitutional error in the exchange between

6    Romine and Galloway as there was no failure to advise Galloway of mandatory jail time if he refused

7    to take a breathalyzer test while at the Ranger Station.  Romine's admonition plainly informed

8    Galloway that his choice to refuse the test would result in another freestanding charge.  Romine also

9    did not mislead Galloway regarding what would happen if he took the test and failed; that is, he told

10   Galloway that he would be charged with another freestanding crime if he failed the test.  Romine

11   "made it clear that refusing the test was not a 'safe harbor' free of adverse consequences."[52]

12   Galloway was given accurate information, unlike *Harrington*, and did not face any mandatory

13   consequences of which he was not informed, unlike *Roberts*.  Romine's admonition about additional

14   charges that may result from Galloway's choice was not so fundamentally unfair as to raise due

15   process concerns.

16        C.    Romine's admonition did not risk erroneous deprivation of Galloway's driving

17              privileges.

18           Galloway also takes issue with Romine's warning about his driving privileges.  Galloway

19   does not articulate what constitutionally protected interest he claims is at stake here, but the Court

20   acknowledges that Galloway has a property interest in his Nevada driver's license.[53]  The parties

21   also do not discuss whether the ability to drive on federal land specifically confers a distinct property

22   interest.  The Court has not located precedent discussing this particular precedent; however, the

23   Court has doubts that Galloway's right to drive on federal land implicates a constitutionally protected

---

25   [51]    *Id*.

     [52]    *Neville*, 459 U.S. at 566.

26   [53]    *See Dixon v. Love*, 431 U.S. 105, 112 (1977) (suspension of driver's license affects a person's property interest
     and must meet due-process requirements); *Illinois v. Batchelder*, 463 U.S. 1112, 1116 (1983) ("th[e] suspension of a

27   driver's license for statutorily defined cause implicates a protectible property interest) (quoting *Mackey v. Montrym*, 443
     U.S. 1, 10 (1979)); *Franceschi v. Yee*, 887 F.3d 927, 935 (9th Cir. 2018) ("Most [driver's] licenses are constitutionally

28   protected property and cannot be taken away without procedural due process required by the Fourteenth Amendment.").

1   interest of any kind.[54]  However, even if the Court assumes, without deciding, that Galloway has a

2   constitutionally protected interest in driving privileges on federal land as conveyed through his state

3   driver's license, Romine's admonition did not risk the erroneous deprivation of that interest.

4        Romine told Galloway that refusal to take a breath test would result in the loss of his Nevada

5   driver's license for six months.  This was inaccurate because Galloway was arrested on federal land

6   and the federal consequences would result in the administrative suspension of Galloway's driving

7   privileges on federal land for 12 months.  ECF No. 16 at 6-7.[55]  However, this mistake was not so

8   fundamentally flawed as to deprive Galloway of the ability to choose whether to take or refuse the

9   breath test.  Romine warned Galloway that refusal would result in the loss of driving privileges.

10  While the specific identification of which driving privileges would be affected was incorrect, the

11  warning Galloway received was sufficient to demonstrate that refusal came with consequences that

12  would impact his ability to drive.  The difference, however, did not so cloud the choice Galloway

13  had to make as to deprive him of due process.  Galloway was adequately warned that refusal would

14  come with adverse consequences, and he chose to take the test based on somewhat faulty, but not

15  fundamentally misleading information.  *Neville* is again instructive here.[56]  Despite the fact that

16  Galloway was misinformed about the exact driving consequences of his choice, he was provided

17  sufficient notice that his driving privileges would be adversely affected if he refused the breath test.

18        *Harrington* does not compel a different result.  Galloway incorrectly interprets *Harrington*

19  to hold that any mistake in a refusal admonition violates due process.  *Harrington* does *not* hold, as

20  Galloway contends, that "a federal officer investigating a federal DUI must admonish the suspect of

21  the federal consequences, not the state consequences."  ECF No. 16 at 7.  The holding in *Harrington*

22  stands for a narrower proposition.  *Harrington* was concerned with the content of the misstatement

23  made three times, not its source—it was significant that California law did not impose a separate

---

54      *In Board of Regents v. Roth*, 408 U.S. 564, 577 (1972), the Supreme Court stated: "To have a property interest
in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral
expectation of it.  He must, instead, have a legitimate claim of entitlement to it. … Property interests, of course, are not
created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings
that stem from an independent source such as state law rules or understandings that secure certain benefits and that
support claims of entitlement to those benefits."

55      18 U.S.C. § 3118.

56      459 U.S. at 566.

charge if a suspect refused a test while federal law did. The "stark difference between the consequences of refusal as described by the rangers and the real consequences," combined with the officer's repetition of the inaccurate information, caused the due process violation in *Harrington*.[57] The difference between losing federal versus state driving privileges is not as stark as the difference between the state and federal consequences applicable to the defendant in *Harrington* who under state law could *not* be charged with a separate and additional criminal offense while under federal law he could.

Further, Galloway incorrectly contends that *Harrington* stands for the sweeping proposition that "if an officer chooses to advise a person of [the consequences of refusal], he must do so correctly." ECF No. 16 at 5. Instead, *Harrington's* holding states that: "[w]hen an admonition is given, we hold that due process is violated where … the admonition incorrectly *informs the suspect that his refusal is not a freestanding crime, when it in fact is.*"[58] This precedential holding was not violated in this case, and does not extrapolate to support that the error in Romine's admonition violated due process.[59]

> D.   <u>Galloway has no due process right to counsel before deciding whether to take a breath test</u>.

Galloway's unheeded requests for a lawyer do not compel a different result. First, Galloway does not have a Sixth Amendment right to counsel before taking or refusing a blood-alcohol test—

---

[57]   *Harrington*, 749 F.3d at 829.

[58]   *Id.* at 830 (emphasis added).

[59]   Neither party adequately discusses whether it is significant that, in both *Harrington* and *Roberts*, the defendant was charged and convicted of refusing to take a breath test, and suffered consequences affecting their liberty as a result of that refusal. It is well-established that drunk driving suspects do not have a constitutional right to refuse a breath test. *See Neville*, 459 U.S. at 560 n.10 ("a person suspected of drunk driving has no constitutional right to refuse to take a blood-alcohol test"). At least some courts, when faced with the issue presented here, have determined that a defendant who took a breath test following an inaccurate refusal admonition has no due process claim because refusal itself is not a right. *See, e.g., United States v. Sauls*, 981 F. Supp. 909, 914 (D. Md. 1997) (finding no constitutional error when officer read state, not federal, driving consequences of refusal, noting that defendant could not show how he was harmed by "taking a test that the federal law required he take"); *U.S. v. Parrent*, Case No. 11-MJ-100, 2012 WL 113569, at *3-4 (D. Wyo. Jan. 12, 2012) (finding no constitutional error when officer read state, not federal, driving consequences of refusal because "under the Federal Statute, the defendant had no legal right to refuse to take the chemical test"). *Harrington* does not address this contention, presumably because the defendant in that case faced a deprivation of liberty because he refused. In a case such as the one before this Court, it is not entirely clear the Ninth Circuit would extend *Harrington* to instances where a defendant took a test he had no right to refuse, even if he was misinformed of the consequences of refusal.

13

a point Galloway appears to concede.[60]  Nor does Galloway have a right to counsel under the Fifth Amendment's protection against self-incrimination because a blood-alcohol test, or the refusal of one, is not testimonial evidence.[61]

Galloway relies on *Roberts* to contend that due process requires access to a lawyer before deciding to take a breath test because he was misinformed of the consequences of refusal.  ECF No. 16 at 9-10.  But, as discussed above, the court in *Roberts* stated: "we do not find, in this case at least, that a suspected drunk driver has a due process right to contact an attorney whenever the state imposes mandatory sentencing consequences upon the refusal of the suspect to take a blood/alcohol test.  Rather, we find that where the suspect makes a reasonable request to contact his or her attorney and the attorney can correct misleading information provided by the state at a point when the suspect must make a decision that is crucial of his or her subsequent sentencing, due process requires that the suspect's request be honored."[62]

A review of the decision in *Roberts* demonstrate that the court repeatedly focused on the unique circumstances of that case.  Galloway's case is not unique, and the circumstances are not similar to those in *Roberts* as not only did Galloway not face any irreversible consequences from the choice he made following Romine's admonition, but Galloway was not misled about an irrevocable consequence.  Unlike *Roberts*, Galloway's attorney still has the opportunity to defend him against the charges or consequences that flowed from Galloway's decision to take the breath test.  For this, and all reasons stated above, the Court does not find a due process violation in Romine's denial of Galloway's requests for a lawyer prior to taking a blood-alcohol test.

---

[60]    *See* ECF No. 16 at 9-10 (citing *Roberts*, 48 F.3d at 1293 (finding that Sixth Amendment right to counsel does not attach to a chemical test)).  *See also Nyflot v. Minnesota Comm'r of Public Safety*, 474 U.S. 1027 (1985) (summarily dismissing appeal for want of substantial federal jurisdiction on the question of whether the Sixth Amendment's right-to-counsel attaches to blood-alcohol tests); *McVeigh v. Smith*, 872 F.2d 725, 728 (6th Cir. 1989) (interpreting *Nyflot* to hold that the Sixth Amendment right to counsel does not attach before a suspect's decision to take a blood-alcohol test); *Kanikaynar v. Sisneros*, 190 F.3d 1115, 1118 (10th Cir. 1999) (same); *Langelier v. Coleman*, 861 F.2d 1508, 1512 (11th Cir. 1988) (finding no Sixth Amendment or due process right to counsel before a blood-alcohol test); *Perez v. Pima County Superior*, 50 Fed. Appx. 368, at *2 (9th Cir. 2002) (unpublished) (denying habeas petition because [p]etitioner does not have a federal right to consult with counsel prior to submitting to a chemical sobriety test, or a federal right to have counsel physically present during the test").
[61]    *Neville*, 459 U.S. at 562–564; 563 n. 15; *Schmerber*, 384 U.S. at 765.
[62]    *Roberts*, 48 F.3d at 1294.

14

1

**III.    Order**

2          Accordingly,

3          IT IS HEREBY ORDERED that Galloway's Motion to Dismiss, or in the Alternative, for

4   Sanctions Excluding the Use of Chemical Test Evidence (ECF No. 16) is DENIED.

5

6          Dated this 9th day of August, 2021.

7

8

9                                                    _____
                                                     ELAYNA J. YOUCHAH
10                                                   UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28